LEROY v. DOE.

*(Circuit Court, N. D. California.   October 17, 1887.)*

LIMITATIONS OF ACTIONS—SAN FRANCISCO LAND TITLES.
    The act of congress of July 1, 1864, (13 St. 333, § 5,) granting lands within the charter limits of 1851, to San Francisco, for certain purposes, vested a perfect title without a patent, and, as to titles derived under the act, the statute of limitations began to run from the time of its passage.
*(Syllabus by the Court.)*

Action to Recover Lands.

The lands are situated within the limits of the pueblo of San Francisco, and within the corporate limits of the city under the charter of April 15, 1851. In August, 1853, E. C. Marshall filed what is called a pre-emption claim, embracing the lands, took possession, and fenced it. He afterwards conveyed undivided portions to various parties. The numerous defendants and their grantors claiming under Marshall took possession at an early date, and maintained it, claiming title, adversely to plaintiff, up to the time of the commencement of the suit. There were numerous conveyances, and several partitions made between the defendants. The plaintiff also claims an undivided interest, by conveyances made under Marshall, but neither the plaintiff, nor any of his grantees, appear to have been in actual possession since the conveyances from Marshall in 1854. On June 20, 1855, the common council of the city of San Francisco passed an ordinance, since known as the "Van Ness

Ordinance," whereby the city relinquished and granted all its right and title to lands within its corporate limits, "to the parties in actual possession thereof, by themselves or tenants, on or before the first day of January, 1855," with certain specified exceptions, not including the lands in question; "provided, such possession has been continued up to the time of the introduction of this ordinance in the common council; or if interrupted by an intruder, or trespasser, has been, or may be, recovered by legal process." Section 3 provided that the patent issued, or any grant made, by the United States to the city, "shall inure to the several use, benefit, and behoof of the said possessors, their heirs and assigns, mentioned in the preceding section, as fully and effectually, to all intents and purposes, as if it were issued, or made directly to them, individually, and by name." St. 1858, p. 53. This ordinance was ratified and confirmed by an act of the legislature of the state of California approved March 11, 1858, (St. 1858, p. 52.) On July 1, 1864, congress passed an act, section 5 of which provides as follows, to-wit:

"That all the right and title of the United States to lands within the corporate limits of the city of San Francisco, as defined in the act incorporating said city, passed by the legislature of the state of California on the fifteenth day of April, 1851, are hereby relinquished and granted to the said city and its successors, for the uses and purposes specified in the ordinances of said city, ratified by an act of the legislature of the said state, approved on the eleventh of March, 1858, entitled 'An act concerning the city of San Francisco, and to ratify and confirm certain ordinances of the common council of said city,' etc."

The title of the city of San Francisco was confirmed to the pueblo lands, including the lands in controversy, by a decree of the United States circuit court, on May 18, 1865; and, by an act of congress approved March 8, 1866, pending an appeal from the decree of the circuit court, (14 St. 4,) the title of the city was finally granted and confirmed to the city, in trust for those in actual possession, at the time specified, to all the lands embraced in said decree of the circuit court of May 18, 1865; but no patent was issued to the city till after the commencement of this suit, which was on January 28, 1876. The question arising under the statute of limitations was as to when the statute of limitations began to run, as against the parties out of possession, claiming title under the city, through the various proceedings herein stated. The plaintiff insisted that the title from the United States did not become final and perfect until the issue of the patent to the city under the decree of confirmation, and said confirmatory act of 1866. While the defendants maintained that the title became perfect to the lands covered by the act without a patent by the legislative grant in the said act of 1864, and that the statute began to run as to the title derived from the United States under said act, through the city of San Francisco, from the date of that act.

*Wm. Leviston,* for plaintiff.

*Wilson & Wilson,* for defendants.

Before Sawyer, Circuit Judge.

Sawyer, J., (*orally*.)  I have gone over this case very carefully.  As to all that part of the land described in the complaint lying outside of the line of the Marshall claim, the plaintiff failed to show any title, and that point I decided against him at the trial.  As to the other parts, those detached portions lying within the line of the Marshall claim, I am satisfied, that the statute of limitations began to run from the date of the act of congress of July 1, 1864, granting the lands to the city of San Francisco for the purposes stated.  13 St. 333, § 5.  That was a positive statutory grant.  It passed the title as perfectly, as a patent would.  A patent adds nothing to the title.  It only affords a convenient muniment of title.  I have ruled before, and so has Justice Field, that the statute of limitations begins to run as to the lands embraced in this act from the date of its passage.  I am satisfied that there was an adverse possession, from the date of the act, such as would set the statute running even against the party who claims to be a tenant in common.  The other parties did not recognize plaintiff as a tenant in common.  Their claim was so notorious and manifest against all the world, that Leroy must have known it.  They paid the taxes and had various dealings with each other in regard to the lands, recognizing each other's interests, but not the claim of Leroy; they fenced it up, and rented it in parts to tenants, and constantly exercised dominion over it.  There were several partitions and deeds of partition.  Their numerous acts were open and notorious, and wholly in disregard of any claim of Leroy, if he made any pretension to title.  Their acts were of such a character, that he could not fail to have been put on notice.  I am satisfied that under the later decisions, even against a tenant in common, an adverse possession is shown.  There can be no possible question as to all other claimants.  The action is barred by the statute of limitations, and there must be a judgment and finding for the defendants, on that ground.  I put the decision on the ground that the plaintiff is barred by the statute of limitations, without considering the other points as to title.  The statute began to run in 1864; the suit was commenced in 1876.  They were 10 years in such adverse possession.  The action was barred even under the further act of congress of March 8, 1866, (14 St. 4.)

Let there be findings and judgment for defendants.